SIXTH DIVISION
JUNE 25, 2010

No. 1-09-2719

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| BRIGHT HORIZONS CHILDREN'S CENTERS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CH 25512 |
| | ) | |
| RIVERWAY MIDWEST II, LLC, | ) | Honorable |
| | ) | Mary Anne Mason, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff-tenant Bright Horizons Children's Centers, LLC (Bright Horizons), filed a declaratory judgment action in the circuit court of Cook County seeking a determination that its landlord's, defendant Riverway Midwest II, LLC (Riverway), invocation of the "relocation provision" in the parties' written lease agreement was ineffective because the alternative premises proposed by Riverway would cause Bright Horizons to violate Illinois law. Bright Horizons moved for summary judgment in its favor, which the trial court granted. Riverway appeals, and we affirm.

BACKGROUND

Bright Horizons owns and operates 31 child day care facilities in Illinois. On March 30, 2007, Bright Horizons entered into a 10-year lease agreement with Riverway, with respect to commercial space and an adjacent playground located on the ground floor

of the building commonly known as the Riverway Complex located at 6107 North River Road in Rosemont, Illinois (leased premises).

According to the lease agreement the sole "permitted use" for the leased premises is a "Child-care center for children." Section 5.01 of the lease agreement states in pertinent part:

"Section 5.01. Use. Tenant shall use the Leased Premises for the Permitted Use and for no other purpose without the prior written consent of Landlord, which shall not be unreasonably withheld, conditioned or delayed. Tenant warrants and represents to Landlord that it will operate the Child-Care Center in a 'high quality' manner. 'High quality' shall mean that the Child-Care Center shall be a high quality and reputable operation (i) licensed by the Illinois Department of Children and Family Services [(DCFS)] to operate a child care center; (ii) providing an atmosphere for children and parents that is caring, consistent, constructive and challenging; and (iii) throughout the term of this Lease, providing a minimum service level equal to or greater than 1) any material DCFS regulations which are in effect during any Term of this Lease; and 2) services that are substantially consistent with the Day Care Industry Standards."

Section 5.02(a) of the lease agreement states in pertinent part:

"(a) Tenant shall (i) use and maintain the Leased Premises and conduct its business thereon in a safe, careful, reputable and lawful

2

manner, (ii) comply with all covenants that encumber the Building and all laws, rules, regulations, orders, ordinances, directions and requirements of any governmental authority or agency, now in force or which may hereafter be in force, including, without limitations, those which impose upon Landlord or Tenant any duty with respect or triggered by a change in the use or occupation of, or any improvement or alteration to, the Leased Premises."

1. The Relocation Provision

Article 14 of the lease agreement, entitled "Landlord's Right to Relocate Tenant" (Article 14), with which we are primarily concerned in this appeal, provides as follows:

"Landlord shall have the right upon at least one hundred eighty (180) days' prior written notice to Tenant to relocate Tenant and to substitute for the Leased Premises other space in a building in the Riverway Complex or in another building owned by Landlord, or an affiliated entity of Landlord, in the vicinity containing at least as much square footage as the Leased Premises, in a location and on such terms as may be mutually satisfactory to Landlord and Tenant. Landlord shall improve such substituted space, at its expense, with improvements at least equal in quantity and quality to those in the Leased Premises as of the date of the proposed relocation. Landlord shall reimburse Tenant for all reasonable third party expenses incurred in connection with, and caused by, such relocation. In no event shall Landlord be liable to Tenant for any

3

consequential damages as a result of any such relocation, including, but not limited to, loss of business income or opportunity. In the event that Tenant and Landlord cannot mutually agree on the relocation space within thirty (30) days after Landlord provides Tenant with notice of such relocation, then Landlord shall have the right to terminate this Lease effective upon the date that is one hundred eighty (180) days after Landlord's original notice. In consideration of Landlord's right to terminate this Lease, Landlord shall pay Tenant within thirty (30) days after Tenant vacates the Leased Premises, One Hundred Twenty-Five Thousand Dollars ($125,000.00)."

2. Default and Remedy Provision

Article 13 of the lease agreement, entitled "Default and Remedy," contains the following pertinent provisions. Section 13.06 of the lease agreement contains a fee-shifting provision allowing for recovery of attorney fees which provides as follows:

"Section 13.06. Attorney fees. If either party defaults in the performance or observance of any of the terms, conditions, covenants or obligations contained in this Lease and the non-defaulting party obtains a judgment against the defaulting party, then the defaulting party agrees to reimburse the non-defaulting party for reasonable attorney fees incurred in connection therewith *** . Neither party shall be liable to the other for consequential, indirect, special or punitive damages."

4

No. 1-09-2719

Section 13.03 of the lease agreement provides for Riverway's default under the lease agreement and Bright Horizons' remedies in the event of such default. Specifically section 13.03 of the lease agreement provides:

"Section 13.03. Landlord's Default and Tenant's Remedies.

Landlord shall be in default if it fails to perform any term, condition, covenant or obligation required under this Lease for a period of thirty (30) days after written notice thereof from Tenant to Landlord; provided, however, that if the term, condition, covenant or obligation to be performed by Landlord is such that it cannot reasonably be performed within thirty (30) days, such default shall be deemed to have been cured if Landlord commences such performance within said thirty-day period and thereafter diligently undertakes to complete the same. Upon occurrence of any such default, Tenant may sue for injunctive relief or to recover damages for any loss directly resulting from the breach."

Section 13.01 of the lease agreement provides for Bright Horizons' default under the lease agreement and Riverway's remedies in the event of such default. Section 13.01 of the lease agreement provides in pertinent part:

"Section 13.01. Default. The occurrence of any of the following shall be a 'Default':

***

(b) Tenant fails to perform or observe any other term, condition, covenant or obligation required under this Lease for a period of thirty (30)

5

days after written notice thereof from Landlord; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required to cure, then such default shall be deemed to have been cured if Tenant commences such performance within said thirty (30) day period and thereafter diligently completes the required action within a reasonable time."

Section 13.02 of the lease agreement provides Riverway's "rights and remedies" in the event of Bright Horizons' default and includes a rent acceleration clause. Section 13.02 provides in relevant part:

"Section 13.02. Remedies. Upon the occurrence of any Default, Landlord shall have the following rights and remedies, in addition to those stated elsewhere in this Lease and those allowed by law or in equity, any one or more of which may be exercised without further notice to Tenant:

(a) Landlord may re-enter the Leased Premises and cure any Default of Tenant *** .

(b) Without terminating this Lease, Landlord may terminate Tenant's right to possession of the Leased Premises, and thereafter, neither Tenant nor any person claiming under or through Tenant shall be entitled to possession of the Leased Premises, and Tenant shall immediately surrender the Leased Premises to Landlord, and Landlord may re-enter the Leased Premises and dispossess Tenant and any other occupants of the Leased Premises by any lawful means and may remove

6

their effects, without prejudice to any other remedy that Landlord may have. Upon termination of possession, Landlord may (i) re-let all or any part thereof for a term different from that which would otherwise have constituted the balance of the Lease Term and for rent and on terms and conditions different from those contained herein, whereupon Tenant shall be immediately obligated to pay to Landlord an amount equal to the present value (discounted at the Prime Rate) or the difference between the rent provided for herein and that provided for in any lease covering a subsequent re-letting of the Leased Premises, for the period which would otherwise have constituted the balance of the Lease Term (the 'Accelerated Rent Difference'), or (ii) without re-letting, declare the present value (discounted at the Prime Rate) of all rent which would have been due under this Lease for the balance of the Lease Term to be immediately due and payable as liquidated damages (the 'Accelerated Rent'). Upon termination of possession, Tenant shall be obligated to pay to Landlord (A) the Accelerated Rent Difference or the Accelerated Rent, whichever is applicable, (B) all loss or damage that Landlord may sustain by reason of Tenant's Default ('Default Damages'), which shall include, without limitation, expenses of preparing the Leased Premises for re-letting, demolition, repairs, tenant finish improvements, brokers' commissions and attorney fees, and (C) all unpaid Minimum Annual Rent and Additional Rent that accrued prior to the date of termination of

7

possession, plus any interest and late fees due hereunder (the 'Prior

Obligations').

(c) Landlord may terminate this Lease and declare the Accelerated

Rent to be immediately due and payable, whereupon Tenant shall be

obligated to pay to Landlord (i) the Accelerated Rent, (ii) all of Landlord's

Default Damages, and (iii) all Prior Obligations *** .

(d) Landlord and Tenant acknowledge and agree that the payment

of the Accelerated Rent Difference or the Accelerated Rent as set above

shall not be deemed a penalty, but merely shall constitute payment of

liquidated damages, it being understood that actual damages to Landlord

are extremely difficult, if not impossible, to ascertain *** ."

### 3. Integration Clause

Section 16.07 of the lease agreement contains an integration clause providing that

"This Lease represents the entire agreement between Landlord and Tenant covering

everything agreed upon or understood in this transaction. There are no oral promises,

conditions, representations, understandings, interpretations or terms of any kind as

conditions or inducements to the execution hereof or in effect between the parties."

### 4. Licensing Requirements

At the time the parties in the case at bar entered into the lease agreement, section

7(a) of the Illinois Child Care Act of 1969 (Act) (225 ILCS 10/1 *et seq.* (West 2006))

provided that "[DCFS] must prescribe and publish minimum standards for licensing that

apply to the various types of facilities for child care defined in this Act." 225 ILCS

10/7(a) (West 2006).  Section 7(a)(5) of the Act further provided that DCFS prescribe and publish minimum standards relating to the "appropriateness, safety, cleanliness and general adequacy of the premises, including maintenance of adequate fire prevention and health standards conforming to State laws and municipal codes to provide for the physical comfort, care and well-being of children received."  225 ILCS 10/7(a)(5) (West 2006).

The DCFS "Licensing Standards for Day Care Centers" pertinent to this dispute are contained at Title 89, section 407.370(c), of the Illinois Administrative Code, which provides in relevant part:

"c) Infants and toddlers shall be housed and cared for at ground level unless otherwise approved through the exception process below. Travel distance between any point in a room used for infants and toddlers and an exit discharging directly outside shall not exceed 150 feet.  Only a fire inspector from the Office of the State Fire Marshall or the Chicago Fire Department's Fire Prevention Bureau may grant an exception to the requirement that infants and toddlers be housed and cared for at ground level."  89 Ill. Adm. Code §407.370(c).

Further, section 18 of the Act provides, "Any person, group of persons, association or corporation who *** violates any other provision of this Act or any reasonable rule or regulation adopted and published by [DCFS] for the enforcement of the provisions of this Act, is guilty of a Class A misdemeanor."  225 ILCS 10/18(7) (West 2006).

5.  Riverway's Invocation of the Relocation Provision

According to Riverway's "Answer and Affirmative Defenses to [Bright Horizons'] Complaint for Declaratory Judgment," Riverway sent a letter to Bright Horizons notifying Bright Horizons that it intended to exercise its right under Article 14 of the lease agreement to relocate Bright Horizons to a second-floor suite located at 1300 West Higgins Road, in Park Ridge, Illinois (First Alternative Proposed Premises). Bright Horizons notified Riverway by letter dated November 12, 2007, that the First Alternative Proposed Premises did not meet the requirements of the lease agreement, as those premises were not located at ground level and did not have an adjacent playground space.

On December 3, 2007, Riverway notified Bright Horizons that it intended to exercise its right under Article 14 of the lease agreement to relocate Bright Horizons to a first-floor suite located at 1300 West Higgins Road in Park Ridge (Second Alternative Proposed Premises). According to Riverway's "Answer and Affirmative Defenses to [Bright Horizons'] Complaint for Declaratory Judgment," Bright Horizons "formally accepted the Second Alternative Proposed Premises and began working with its local operations team and architects to plan and renovate the new space." Shortly after the acceptance of the alternative space, Riverway withdrew its December 2007 notice and Bright Horizons remained at the leased premises.

According to Riverway's "Answer and Affirmative Defenses to [Bright Horizons'] Complaint for Declaratory Judgment," on May 27, 2008, Riverway, through its attorney, sent another letter to Bright Horizons notifying Bright Horizons that it intended to exercise its right under Article 14 of the lease agreement to relocate Bright

Horizons to a second-floor suite located at 10255 West Higgins Road in Rosemont (Third Alternative Proposed Premises). In the May 2008 notice, Riverway informed Bright Horizons that if the parties were unable to agree on new space for the leased premises, Riverway would have the right to terminate the lease "effective upon the date that is one hundred eighty (180) days following the date of [Riverway's] Relocation Notice."

According to the affidavit of Dawn Ellis-Ferzacca, Bright Horizons' Chicago area regional manager, which was attached to Bright Horizons' "Memorandum of Law in Support of Motion for Summary Judgment," Bright Horizons attempted to obtain an exception to the ground-floor requirement of the DCFS licensing standards, so that Bright Horizons might accept Riverway's May 2008 demand without violating DCFS regulations. Ellis-Ferzacca's affidavit states that she contacted the Office of the Illinois State Fire Marshall (Fire Marshall) to request an exception to the ground-floor requirement contained at Title 89, section 407.370(c), of the Illinois Administrative Code, to allow Bright Horizons to relocate to the Third Alternative Proposed Premises as requested by Riverway. On June 11, 2008, the Fire Marshall's office informed Ellis-Ferzacca that it would not grant such an exception to Bright Horizons.

Bright Horizons notified Riverway that the Third Alternative Proposed Premises did not meet the requirements of the DCFS licensing standards, which required Bright Horizons to operate at ground level. On June 19, 2008, counsel for Riverway sent a letter to Bright Horizons claiming that Bright Horizons was in "default" of the lease pursuant to section 13.01(b) of the lease agreement. The June 19, 2008, letter also notified Bright Horizons that Bright Horizons could cure its alleged "default" within 30 days by

relocating to the Third Alternative Proposed Premises. The June 19, 2008, letter further stated that if Bright Horizons did not cure the alleged "default" within 30 days, Riverway would terminate the lease and enforce the accelerated rent provision in section 13.02(b) of the lease agreement.

### 6. The Declaratory Judgment Action

On July 16, 2008, Bright Horizons filed its "Complaint for Declaratory Judgment." Bright Horizons requested that the trial court find that: (a) Riverway's May 27, 2008, relocation notice was ineffective; (b) Bright Horizons was not in breach of the lease agreement by reason of its rejection of the May 27, 2008, notice; (c) Riverway may not terminate the lease; (d) in order to properly exercise any right to relocate under Article 14 of the lease agreement, Riverway must offer alternative space that would be "usable as a child care facility consistent with the only 'permitted use' " of the leased premises; and (e) Bright Horizons is entitled to its attorney fees and costs pursuant to section 13.06 of the lease agreement.

On August 28, 2008, Riverway filed its "Answer and Counterclaim," seeking a declaration that: (a) the May 27, 2008, relocation notice was effective under the lease agreement; (b) Bright Horizons' refusal to comply with the relocation notice constituted a default under the lease agreement; (c) Riverway is entitled to terminate the lease; (d) Bright Horizons must surrender the leased premises; and (e) Riverway is entitled to its attorney fees and costs.

On October 31, 2008, Bright Horizons filed its motion for summary judgment requesting that the trial court declare the parties' rights concerning Riverway's request

12

for relocation as a matter of law and enter judgment in favor of Bright Horizons. In response to Bright Horizons' motion for summary judgment, Riverway submitted an affidavit pursuant to Illinois Supreme Court Rule 191(b) (210 Ill. 2d R. 191(b))[1], requesting that the trial court allow it to take limited discovery as to whether "any requirement of a first floor location was the subject of discussion or negotiation prior to the execution of the lease agreement between the parties." On November 19, 2008, the trial court entered and continued Bright Horizons' motion for summary judgment subject to the limited discovery requested by Riverway.

The parties subsequently exchanged written discovery. Riverway's first interrogatory requested as follows:

"Interrogatory No. 1: Prior to the parties [*sic*] signing of the lease on March 30, 2007, was the issue of whether plaintiff's business required location on a ground floor or first floor ever the subject of discussion or negotiation between the parties?"

In its verified answers to Riverway's interrogatory, Bright Horizons stated:

"Bright Horizons does not recall the ground floor requirement being discussed between the parties' representatives. The parties did, however, negotiate the Lease, which required compliance with all applicable laws, rules, regulations, ordinances, directions and requirements of any governmental authority or agency, and the ground floor requirement is one such applicable requirement."

---

[1] The Rule 191(b) affidavit is not included in the record.

13

Bright Horizons, in turn, propounded interrogatories on Riverway requesting it to "Identify any and all communications between the Landlord and Bright Horizons concerning Article 5 [incorporating the DCFS regulations]." In its verified answers, Riverway stated, "See documents produced by defendant in response to plaintiff's first request for production." Riverway produced an e-mail communication from Phil Prassas, a Riverway employee, who apparently participated in lease negotiations with Bright Horizons, wherein he states that "The termination/relocation was never really an issue." Prassas' position with Riverway is not disclosed by the record.

In further response to Riverway's written interrogatories, Bright Horizons disclosed Stephen Dreier, Bright Horizons' chief administrative officer, Antonette Fernandez, senior legal counsel for Bright Horizons, and John Casagrande, whose position with Bright Horizons is not disclosed by the record, as having participated in lease negotiations on behalf of Bright Horizons. Riverway requested that Bright Horizons produce those employees for their discovery depositions, but Bright Horizons refused to do so, contending that its verified answers to Riverway's interrogatories demonstrated that the employees did not discuss a ground-floor requirement during lease negotiations. Riverway then filed a "Motion to Compel [Bright Horizons'] Production of Employee Witnesses for Their Discovery Depositions," which the trial court denied on February 5, 2009. On May 21, 2009, the trial court heard oral argument on Bright Horizons' motion for summary judgment.

14

After receiving briefing from the parties and hearing oral argument, the trial court granted summary judgment in favor of Bright Horizons. In doing so, the court found as follows:

"I have read the materials. I don't agree with [Riverway] that *** Bright Horizons was obligated to not only specify ground floor space, but also include every regulation that DCFS has for childcare facilities.

I looked at the subject matter of this lease. There is one permitted use under the lease. The parties clearly agree that [Bright Horizons] was going to operate a day care center, and incorporated and required [Bright Horizons] to abide by all DCFS regulations applicable to day care centers.

That being the case, [Riverway's] contention that [it did not] know that a day care center servicing infants and toddlers had to be on the ground floor *** doesn't strike me as very persuasive.

I have, as far as I can tell before me, two sophisticated parties who entered into a detailed lease. And they negotiated a provision that allowed [Riverway] to proffer substitute space that was mutually satisfactory to the parties. A space in which [Bright Horizons] cannot operate the one use permitted under the lease, can't as a matter of law be mutually satisfactory. It just can't. So I believe the lease is unambiguous, incorporating as it does the DCFS regulations. And because the space offered by the defendant is space that is not suitable for the only permitted use under the lease, I'm going to rule in favor of [Bright Horizons] on

15

summary judgment, declaring that the May 27, 2008, relocation notice was ineffective under the lease. That [Bright Horizons] is not in breach of the lease by reasons of its rejection of the *** notice.

And that [Riverway] may not terminate the lease under Article 14 as a result of Bright Horizons' refusal to relocate pursuant to the *** notice. I'm not going to declare what Riverway must do in the future. I have declared the facts as they appear before me, and I'm not going to assume that Riverway will continue to offer property at a substitute location that is not suitable for the operation of a childcare facility, but I'm not going to prospectively declare that they must do so."

Following entry of summary judgment, the trial court requested briefing on Bright Horizons' request for attorney fees, based upon the fee-shifting provision at section 13.06 of the lease agreement. Bright Horizons' petition for attorney fees included the affidavit of Bright Horizons' trial counsel attesting to the time entries with regard to his representation of Bright Horizons in the instant matter.

On September 10, 2009, after hearing oral argument on Bright Horizons' petition for attorney fees, the trial court found as follows:

"I have read the submissions of the parties. I've considered the arguments of counsel. I believe section 13.06 of the lease applies under the circumstances present here.

The landlord in this case defaulted in its fundamental obligation under the lease to offer substitute space that was usable for the sole

activity provided for in the lease, and that was the operation of a child care center servicing infants and toddlers. The landlord after notice from [Bright Horizons] persisted in offering space that was unusable for the purpose. And I find that under a reasonable interpretation of section 13.06, that constitutes a default by the landlord in the performance or observance of the terms, conditions, covenants, or obligations contained in the lease.

*  *  *

I have examined the affidavit of [Bright Horizons' counsel] attached to the petition which itemizes the fees and expenses incurred in this matter, and I find those fees and expenses are reasonable. And therefore, I award [Bright Horizons] attorney fees in the amount of $47,091, and *** costs in the amount of $379."

This appeal follows.


ANALYSIS

On appeal, Riverway argues that: (1) the trial court erred by finding that the relocation provision of the lease required that Bright Horizons be relocated to a ground-floor space; (2) the trial court erred by denying Riverway the opportunity to take discovery of Bright Horizon's intention and understanding of the lease's relocation

17

provision at the time the parties entered into the lease agreement; and (3) the trial court erred by awarding Bright Horizons its attorney fees and costs.

### 1. Standards of Review

The standard of review from the granting of summary judgment is *de novo*. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009) ("We review appeals from summary judgment rulings *de novo*"). The Code of Civil Procedure (Code) permits a trial court to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006).

In addition, this case concerns the trial court's interpretation of a contract as a matter of law. A contract construed as a matter of law by the trial court may be construed independently by a reviewing court, unrestrained by the trial court's judgment. *Fleet Business Credit, LLC v. Enterasys Networks, Inc.*, 352 Ill. App. 3d 456, 469 (2004), citing *Lewis X. Cohen Insurance Trust v. Stern*, 297 Ill. App. 3d 220, 232 (1998); *Zale Construction Co. v. Hoffman*, 145 Ill. App. 3d 235, 240 (1986). Accordingly, our review from a trial court's interpretation of a contract as a matter of law is *de novo*. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005).

Discovery rulings, in contrast, are within the trial court's discretion and will not be overturned absent an abuse of discretion. *Redelman v. Claire-Sprayway, Inc.*, 375 Ill. App. 3d 912, 927 (2007). Trial courts are vested with wide discretion in ruling on discovery matters, and a reviewing court will not disturb a trial court's discovery rulings

absent an abuse of that discretion. *Pemberton v. Tieman*, 117 Ill. App. 3d 502, 504-05 (1983).

Finally, "[w]hether and in what amount to award attorney fees is within the discretion of the trial court, and the decision will not be disturbed on appeal absent an abuse of that discretion." *R.J. Management Co. v. SRLB Development Corp.*, 346 Ill. App. 3d 957, 971 (2004).

2. The Trial Court Correctly Granted Bright Horizons' Motion for Summary Judgment

Riverway first argues that the trial court erred by granting Bright Horizons' motion for summary judgment because "the clear and unambiguous terms of the lease do not require [Riverway] to provide [Bright Horizons] with an alternative ground floor location."

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). A trial court may enter summary judgment in actions for declaratory judgment brought pursuant to section 2-701 of the Code (735 ILCS 5/2-701 (West 2006)), where there are no questions of material fact and where the only question for the trial court is one of legal interpretation of the parties' contract. See *Dixie Square Thom McAn, Inc. v. Dixie Square Management Co.*, 55 Ill. App. 3d 619, 625 (1977) (affirming the granting of summary judgment in favor of one party on a claim for declaratory judgment, where no questions of material fact existed regarding execution of lease and where the issue was one of legal interpretation).

19

In granting summary judgment in favor of Bright Horizons, the trial court found that, as a matter of law, "Bright Horizons was [not] obligated to *** specify ground floor space [in the lease agreement's relocation provision], [and] include every regulation that DCFS has for childcare facilities [in the lease agreement]." The trial court found that there was one permitted use of the leased premises under the lease agreement, namely, the operation of a child day care center, and that the lease agreement unambiguously incorporated and required Bright Horizons to comply with all DCFS regulations applicable to child day care centers. Further, the trial court found unpersuasive Riverway's contention that it was not aware that Bright Horizons was servicing infants and toddlers at the leased premises or that infants and toddlers were required to be housed and cared for at ground level pursuant to DCFS licensing standards. Interpreting the lease agreement as a matter of law, the trial court found that the parties negotiated a provision in the lease agreement that allowed Riverway to proffer substitute space for Bright Horizons' relocation that was mutually satisfactory to the parties, and that the second-floor space offered by Riverway pursuant to its May 2008 relocation notice could not be mutually satisfactory as Bright Horizons' relocation to the proposed space would cause it to violate DCFS licensing standards and cause it to lose its license as a "Child-care center." Accordingly, the trial court found that the proposed space could not be mutually satisfactory to the parties. After having found that the proposed space was not mutually satisfactory as defined by the lease agreement's relocation provision, the trial court found that Bright Horizons was not in breach of the lease by rejecting Riverway's

20

No. 1-09-2719

May 2008 relocation notice, and that Riverway may not terminate the lease as a result of Bright Horizons' refusal to relocate pursuant to the May 2008 relocation notice.

The principal objective in construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract. *Fleet Business Credit,* 352 Ill. App. 3d at 469, citing *Schweihs v. Davis, Friedman, Zavett, Kane & MacRae*, 344 Ill. App. 3d 493, 500 (2003); *Zale Construction Co. v. Hoffman*, 145 Ill. App. 3d 235, 241 (1986); *Ancraft Products Co. v. Universal Oil Products Co.*, 100 Ill. App. 3d 694, 697 (1981). To determine the intent of the parties, the court must look to the instrument itself, its purpose and the surrounding circumstances of its execution and performance. *Fleet Business Credit*, 352 Ill. App. 3d at 469.

"When a dispute exists between the parties as to the meaning of a contract provision, the threshold issue is whether the contract is ambiguous." *Fleet Business Credit*, 352 Ill. App. 3d at 469, citing *Installco, Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 783 (2002). "Contractual language is ambiguous when it is ' "susceptible to more than one meaning [citation] or is obscure in meaning through indefiniteness of expression." ' " *Fleet Business Credit*, 352 Ill. App. 3d at 469, quoting *Shields Pork Plus, Inc. v. Swiss Valley Ag Service*, 329 Ill. App. 3d 305, 310 (2002), quoting *Wald v. Chicago Shippers Ass'n* , 175 Ill. App. 3d 607, 617 (1988). An ambiguity is not created simply because the parties do not agree upon an interpretation. *Fleet Business Credit*, 352 Ill. App. 3d at 469, citing *Groshek v. Frainey*, 274 Ill. App. 3d 566, 569 (1995); *Zale*, 145 Ill. App. 3d at 241; *Harlem-Irving Realty, Inc. v. Alesi*, 99 Ill. App. 3d 932, 936

21

(1981). Illinois courts follow the "four corners" rule when interpreting contracts, which requires:

> " ' "An agreement, when reduced to writing, must be presumed to speak the intentions of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." ' " *Fleet Business Credit*, 352 Ill. App. 3d at 469-70, quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999), quoting *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291 (1962).

"A court may consider extrinsic evidence provisionally, however, for the limited purpose of determining whether an ambiguity exists." *Fleet Business Credit*, 352 Ill. App. 3d at 470, citing *Air Safety*, 185 Ill. 2d at 463; *Economy Preferred Insurance Co. v. Jersey County Construction, Inc.*, 246 Ill. App. 3d 387, 390 (1993). Specifically, negotiations leading up to the lease can be considered to determine the intent of the parties in their use of particular words and phrases. *Arrington v. Walter E. Heller International Corp.*, 30 Ill. App. 3d 631, 637 (1975), citing *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283 (1958); *Chicago Auditorium Ass'n v. Corporation of the Fine Arts Building*, 244 Ill. 532, 539 (1910). "Whether the contract is ambiguous is [a matter] of law." *Fleet Business Credit*, 352 Ill. App. 3d at 470, citing *Installco*, 336 Ill. App. 3d at 783; *Ancraft*, 100 Ill. App. 3d at 697.

Riverway argues that the trial court erred by finding that the lease agreement required Riverway to proffer substitute space at ground level because a "ground floor"

22

requirement is never stated in the lease agreement. Accordingly, Riverway argues that relocation to a ground-floor space was not one of the limitations to Riverway's exercise of its "Right to Relocate [Bright Horizons]," and that if Bright Horizons intended that the relocation provision should be subject to a ground-floor requirement, the requirement should have been included in the lease agreement. Riverway also points to the integration clause contained in section 16.07 of the lease agreement as further support of its contention that the parties did not intend a ground-floor requirement when drafting the lease agreement's relocation provision. As noted, the integration clause provides that "This Lease represents the entire agreement between Landlord and Tenant covering everything agreed upon or understood in this transaction. There are no oral promises, conditions, representations, understanding, interpretations or terms of any kind as conditions or inducements to the execution hereof or in effect between the parties."

Further, Riverway argues that the lease agreement does not incorporate DCFS regulations, and that even if the lease agreement did incorporate DCFS regulations, the lease agreement in no way requires Riverway to comply with those regulations. Stated otherwise, Riverway argues that Bright Horizons is required to be "licensed by [DCFS] to operate a child care center *** [and] provide a minimum service level equal to or greater than any material DCFS regulations which are in effect during any Term of this Lease," but those requirements cannot be imputed to Riverway.

We agree with the trial court's interpretation of the lease agreement and find Riverway's arguments to the contrary unpersuasive. The lease agreement at issue here provides for one permitted use, namely, a "Child-care center for children." Further,

23

section 5.01 of the lease agreement provides that Bright Horizons operate a child-care center for children which is licensed by DCFS and provide a "minimum service level equal to or greater than *** any material DCFS regulations which are in effect" during the term of the lease agreement. Further section 5.02(a) of the lease agreement states that Bright Horizons "comply with all *** laws, rules, regulations, orders, ordinances, directions and requirements of any governmental authority or agency, now in force or which may hereafter be in force."

At the time the parties in the case at bar entered into the lease agreement, section 407.370(c) of Title 89 of the Illinois Administrative Code, which contains the DCFS licensing standards pertinent to this dispute, provided:

> "c) Infants and toddlers shall be housed and cared for at ground
> level unless otherwise approved through the exception process below. ***
> Only a fire inspector from the Office of the State Fire Marshall or the
> Chicago Fire Department's Fire Prevention Bureau may grant an
> exception to the requirement that infants and toddlers be housed and cared
> for at ground level." 89 Ill. Admin. Code §407.370(c).

Further, section 18 of the Act provides, "Any person, group of persons, association or corporation who *** violates any other provision of this Act or any reasonable rule or regulation adopted and published by [DCFS] for the enforcement of the provisions of this Act, is guilty of a Class A misdemeanor." 225 ILCS 10/18(7) (West 2006).

In its verified answers to Riverway's supplemental interrogatories, which Riverway attached as an exhibit to its response to Bright Horizons' motion for summary

24

judgment, Bright Horizons stated that "All 34 full service child care centers [that Bright Horizons operates in Illinois] serve infants and toddlers in ground level or first floor space" and attached a list of the names and addresses of such infants and toddlers, including the infants and toddlers serviced at the leased premises. Further, the affidavit of Ellis-Ferzacca, Bright Horizons' Chicago area regional manager, evidences that Bright Horizons services infants and toddlers at the leased premises. See *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill. App. 3d 282, 288 (1993) (" 'where a party moving for summary judgment files supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted' "), quoting *Eastside Fire Protection District v. City of Belleville*, 221 Ill. App. 3d 654, 657 (1991).

The record in the case at bar demonstrates that Riverway first notified Bright Horizons of its intention to exercise its right under Article 14 of the lease agreement to relocate Bright Horizons in November 2007, only 5 months after the parties had entered into the 10-year lease agreement. In that notice, Riverway sought to relocate Bright Horizons to the First Alternative Proposed Premises, a second-floor suite with no adjacent playground area. As noted, by letter dated November 12, 2007, Bright Horizons notified Riverway that the First Alternative Proposed Premises did not meet the requirements of section 5.01 of the lease agreement as those premises were not located at ground level and did not have an adjacent playground area.

Riverway provided a second notice of its intention to relocate Bright Horizons under Article 14 of the lease agreement on December 3, 2007, to the Second Alternative

25

Proposed Premises, a first-floor suite with an adjacent playground area. Bright Horizons accepted Riverways' December 3, 2007, notice and made efforts to begin the relocation process. Shortly after Bright Horizons' acceptance of Riverway's December 3, 2007, notice, Riverway withdrew its notice and Bright Horizons remained at the leased premises.

On May 27, 2008, Riverway, provided a third notice of its intention to relocate Bright Horizons under Article 14 of the lease agreement, which is the notice at issue in this appeal, to the Third Alternative Proposed Premises, a second-floor suite with a playground area located on the ground floor. In its May 27, 2008, notice, Riverway also informed Bright Horizons that if the parties were unable to agree on alternative space, Riverway would have the right to terminate the lease "effective upon the date that is [180] days following the date of [Riverway's] Relocation Notice." According to the affidavit of Ellis-Ferzacca, after receiving Riverway's third notice of intention to relocate Bright Horizons, Bright Horizons attempted to obtain an exception to the ground-floor requirement to DCFS's licensing standards, so that Bright Horizons might accept Riverway's third notice of its intention to relocate Bright Horizons without violating DCFS regulations. On June 11, 2008, the Fire Marshall denied Bright Horizons' application for such an exception. Following the Fire Marshall's denial of Bright Horizons' application for an exception to the ground-floor requirement, Bright Horizons notified Riverway that the Third Alternative Proposed Premises did not meet the requirements of the DCFS licensing standards. On June 19, 2008, Riverway, through its legal counsel, sent a letter to Bright Horizons claiming that Bright Horizons was in

26

"default" of the lease agreement. The June 19, 2008, letter further stated that if Bright Horizons did not cure the alleged "default" within 30 days, Riverway would terminate the lease and enforce the accelerated rent provision in section 13.02(b) of the lease agreement. As noted, Bright Horizons filed this declaratory action on July 16, 2008.

Bright Horizons argues that Riverway's use of the relocation provision shows Riverway's blatant attempt to terminate the lease prematurely without complying with its obligations under the relocation provision. Namely, Bright Horizons argues that Riverway is attempting to avoid its obligation to improve any alternative space at its expense "with improvements at least equal in quantity and quality to those in the Leased Premises [and to] reimburse [Bright Horizons] for all reasonable third party expenses incurred in connection with, and caused by, such relocation." In support of its argument, Bright Horizons points to the fact that it accepted Riverway's second notice of relocation and that Riverway withdrew its notice shortly after such acceptance.

We observe that although the record does support Bright Horizons' contention, the record is not sufficient, as thus far developed, to determine conclusively whether Riverway wrongfully exercised its rights under the relocation provision to attempt to wrongfully terminate the lease without complying with its own obligations thereunder. However, under the facts of the case at bar, Bright Horizons' relocation to any space other than a ground-floor space would violate section 407.370 of the DCFS licensing standards and cause Bright Horizons to be in breach of the lease agreement because it could not operate a child-care facility, the only permitted use under the lease agreement, at the Third Alternative Proposed Premises. Accordingly, the trial court correctly

27

determined that the Third Alternative Proposed Premises could not be mutually satisfactory as required by the lease agreement's relocation provision.

Riverway cites to *Braeside Realty Trust v. Cimino*, 133 Ill. App. 3d 1009 (1985), in support of its argument that it was not required to proffer substitute ground-floor space to Bright Horizons because relocation to a ground-floor space was not a requirement under the relocation provision of the lease agreement. In *Braeside*, the parties negotiated and entered into a written agreement for the lease of commercial property. During negotiations and in the written agreement, the tenant's obtaining of an occupancy permit from the municipality for the operation of a catering business which included the storage of catering trucks was not addressed by the parties or included in the written agreement. *Braeside*, 133 Ill. App. 3d at 1012. Thereafter, the municipality's building commissioner informed the tenant that he would not be able to obtain the required occupancy permit and the tenant failed to apply for the permit. *Braeside*, 133 Ill. App. 3d at 1011. The tenant then informed the landlord that he could not perform under the lease, and the landlord advertised the space and rented it to a new tenant a few months later. *Braeside*, 133 Ill. App. 3d at 1010.

The court in *Braeside* found the tenant to be in breach of the lease for failing to pay rent. *Braeside*, 133 Ill. App. 3d at 1011-12. The court reasoned that the lease only showed that the parties intended that the tenant lease space from the landlord. *Braeside*, 133 Ill. App. 3d at 1011. If the tenant intended that the operation of the lease depended on obtaining an occupancy permit or some other license, the tenant could have inserted a provision to that effect in the lease. *Braeside*, 133 Ill. App. 3d at 1012.

28

*Braeside* is certainly distinguishable from the case at bar. The lease agreement in the case at bar specifically requires Bright Horizons to be "(i) licensed by [DCFS] to operate a child care center" and "comply with all laws, rules, regulations, orders, ordinances, directions and requirements of any governmental authority or agency." The parties in the case at bar specifically incorporated the DCFS licensing standards in the lease agreement and limited Riverway's right to relocate Bright Horizons to an alternate space that was mutually satisfactory to the parties. The trial court correctly found that Bright Horizons' relocation to the Third Alternative Proposed Premises would cause Bright Horizons to violate DCFS licensing standards and cause its license to be revoked so it could not operate a day care center. Accordingly, Bright Horizons' refusal to accept Riverway's relocation to the Third Alternative Proposed Premises did not cause Bright Horizons to be in default of the lease agreement.

3. The Trial Court Did Not Abuse Its Discretion When Entering Its Discovery Rulings

Riverway then argues that the trial court abused its discretion when denying defendant's request to take discovery on the issue of whether the ground-floor requirement was discussed prior to the time the parties entered into the lease agreement. This is not persuasive.

First, we observe that Riverway has failed to specify which of the trial court's discovery rulings were allegedly made in error in its appellant's brief and only raises the arguments in its reply brief. As a result the arguments are waived. 210 Ill. 2d R. 341(h)(7) ("Points not argued [in the appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Even if Riverway's

29

arguments are not waived, the arguments raised in Riverway's reply brief are also not persuasive.

As noted, discovery rulings are within the trial court's sound discretion and will not be overturned absent an abuse of that discretion. *Redelmann v. Claire-Sprayway, Inc.*, 375 Ill. App. 3d 912, 927 (2007). Great latitude is allowed to the trial court in the scope of the discovery it allows, and the concept of relevance is broader for discovery purposes than for purposes of admitting evidence at trial. *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 556 (1998), citing *Leeson v. State Farm Mutual Automobile Insurance Co.*, 190 Ill. App. 3d 359, 365 (1989). Relevance for discovery purposes includes not only what is admissible at trial, but also that which leads to admissible evidence. *Whitley*, 295 Ill. App. 3d at 557, citing *Pemberton*, 117 Ill. App. 3d at 504-05. Discovery should be denied, however, when there is insufficient evidence that the requested discovery is relevant to the issues in the case. *Whitley*, 295 Ill. App. 3d at 557, citing *Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd.*, 230 Ill. App. 3d 308, 317 (1992).

As noted, Bright Horizons filed its motion for summary judgment on October 31, 2008. On November 12, 2008, Riverway submitted an affidavit pursuant to Illinois Supreme Court Rule 191(b) (210 Ill. 2d Rule 191(b)), requesting that the trial court allow it to take limited discovery as to whether "any requirement of a first floor location was the subject of discussion or negotiation prior to the entry of the lease agreement between the parties." On November 19, 2008, the trial court entered and continued Bright Horizons' motion for summary judgment and granted Riverway request to conduct

limited discovery. The parties subsequently exchanged written discovery on that narrow issue. Riverway's first interrogatory was as follows:

> "Interrogatory No. 1: Prior to the parties [*sic*] signing of the lease on March 30, 2007, was the issue of whether plaintiff's business required location on a ground floor or first floor ever the subject of discussion or negotiation between the parties?"

In its verified answers to Riverway's interrogatory, Bright Horizons stated:

> "Bright Horizons does not recall the ground floor requirement being discussed between the parties' representatives. The parties did, however, negotiate the Lease, which required compliance with all applicable laws, rules, regulations, ordinances, directions and requirements of any governmental authority or agency, and the ground floor requirement is one such applicable requirement."

Bright Horizons, in turn, propounded interrogatories on Riverway requesting it to "Identify any and all communications between the Landlord and Bright Horizons concerning Article 5 [incorporating the DCFS regulations]." In its verified answers, Riverway stated, "See documents produced by defendant in response to plaintiff's first request for production." Riverway produced an e-mail communication from Phil Prassas, a Riverway employee, who apparently participated in lease negotiations with Bright Horizons, wherein he states that "The termination/relocation was never really an issue." Prassas' position with Riverway is not disclosed by the record.

In further response to Riverway's written interrogatories, Bright Horizons disclosed Stephen Dreier, Bright Horizons' chief administrative officer, Antonette Fernandez, senior legal counsel for Bright Horizons, and John Casagrande, whose position with Bright Horizons is not disclosed by the record, as having participated in lease negotiations on behalf of Bright Horizons. Riverway requested that Bright Horizons produce those employees for their discovery depositions, but Bright Horizons refused to do so, contending that its verified answers to Riverway's interrogatories demonstrated that the employees did not discuss a ground-floor requirement during lease negotiations. Riverway then filed a "Motion to Compel [Bright Horizons'] Production of Employee Witnesses for Their Discovery Depositions," which the trial court denied on February 5, 2009.

In its reply brief, Riverway argues that the trial court erred by denying its motion to compel Bright Horizons' production of the Bright Horizons' employees who participated in lease negotiations for their discovery depositions. As noted, Riverway sought leave to conduct discovery on the narrow issue of whether the parties had discussed the ground-floor requirement prior to the time the parties entered into the lease agreement. In response to Riverway's written interrogatories, Bright Horizons stated that it "[did] not recall the ground floor requirement being discussed between the parties' representatives." Accordingly, Bright Horizons conceded the issue, and the trial court did not err in denying Riverway's motion to compel Bright Horizons' production of the Bright Horizons' employees who participated in lease negotiations for their discovery depositions.

32

   4.  The Trial Court Did Not Err by Awarding Bright Horizons Its Reasonable Attorney
Fees and Costs

Riverway finally argues that the trial court erred by finding that Riverway defaulted under the lease agreement, thus triggering the fee-shifting provision of section 13.06 of the lease agreement allowing for the recovery of attorney fees.  We disagree.

Ordinarily, the losing party in a lawsuit cannot be required to pay attorney fees to the winning party.  *Bjork v. Draper*, 381 Ill. App. 3d 528, 543 (2008), citing *Chapman v. Engel*, 372 Ill. App. 3d 84, 87 (2007).  There is an exception to the rule, however; contractual "fee-shifting" provisions for the award of attorney fees will be enforced by the courts.  *Bjork*, 381 Ill. App. 3d at 543, citing *Chapman*, 372 Ill. App. 3d at 87.  Here, the lease agreement contained the following fee-shifting provision:

> "Section 13.06.  Attorney fees.  If either party defaults in the
> performance or observance of any of the terms, conditions, covenants or
> obligations contained in this Lease and the non-defaulting party obtains a
> judgment against the defaulting party, then the defaulting party agrees to
> reimburse the non-defaulting party for reasonable attorney fees incurred in
> connection therewith *** .  Neither party shall be liable to the other for
> consequential, indirect, special or punitive damages."

We are required to strictly construe a contractual provision for attorney fees.  *Bjork*, 381 Ill. App. 3d at 544, citing *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 752 (1992).  That is, we construe the fee-shifting provision "to mean nothing more – but also nothing less – than the letter of the text."

33

No. 1-09-2719

*Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952 (2004).  The construction of a contract's fee-shifting provision presents a question of law, which we review *de novo*.  *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 510 (2005).

The trial court in the case at bar determined that Riverway was in default under the lease agreement because it failed to offer alternative space under the relocation provision of the lease agreement to Bright Horizons that was usable for the sole permitted activity under the lease and that Riverway persisted in offering unusable space to Bright Horizons.  Threatened to be declared in default for refusing to accept the unusable alternative space, Bright Horizons filed the instant declaratory action seeking a declaration that it was not in default under the lease.  Bright Horizons obtained a judgment against Riverway.  The trial court correctly found that Riverway's actions triggered the fee-shifting provision as it persisted in offering Bright Horizons unusable space for relocation.

We note that Riverway makes no argument as to the reasonableness of the dollar amount of the attorney fees awarded.  As a result, that argument is not considered and would be waived.  210 Ill. 2d R. 341(h)(7).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

J. GORDON and McBRIDE, JJ., concur.

34