# Illinois Official Reports

## Appellate Court

---

### *McManus v. Richards*, 2018 IL App (3d) 170055

---

| | |
|---|---|
| Appellate Court Caption | MICHELLE McMANUS, Plaintiff and Counterdefendant-Appellant, v. ANNE B. RICHARDS, Defendant and Counterplaintiff-Appellee. |
| District & No. | Third District<br>Docket No. 3-17-0055 |
| Filed<br>Modified upon<br>denial of rehearing | March 2, 2018<br><br>March 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 16-L-67; the Hon. Joseph F. Fackel, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James S. Zmuda, of Califf & Harper, P.C., of Moline, for appellant.<br><br>Jerry J. Pepping and Jennifer L. Kincaid, of Pepping, Balk, Kincaid & Olson, Ltd., of Silvis, and Brett A. Nelson, of Nelson Law Group, P.C., of Flower Mound, Texas, for appellee. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Presiding Justice Carter and Justice McDade concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff and counterdefendant, Michelle McManus, filed this interlocutory appeal following the Rock Island County circuit court's grant of summary judgment in favor of defendant and counterplaintiff, Anne B. Richards. McManus challenges the court's (1) decision to assign the contract's term "cause" its simple dictionary meaning rather that "its established and precise legal meaning" and (2) finding that Richards gave her proper written notice of her intent to disassociate. McManus also challenges the court's grant of the motion for summary judgment on the grounds that it failed to consider her claims regarding breach of fiduciary duty or breach of the duty of good faith and fair dealing. Finally, she asserts that the court erred to the extent that it failed to consider the applicability of the buy-sell agreement as it relates to the purchase of her membership interest in the practice. We reverse and remand.

¶ 2                                        FACTS

¶ 3    The parties are orthodontists. McManus began working at Richards's practice, Quad City Orthodontic Group, LLC (the practice), as an associate in 2010. The practice has an office in Rock Island, Illinois, and another in Bettendorf, Iowa.

¶ 4    On January 1, 2012, the parties entered into an "Agreement for Sale of Membership Interest in Limited Liability Company and Agreement for the Conducting of Professional Business Operations" (Operations Agreement). The parties amended the agreement in December 2012. The agreement provided that Richards, then the sole owner of the practice, would sell a 50% membership interest to McManus, who agreed to purchase her interest over a five-year period. The Agreement further provided for the dissolution of the practice and for the repurchase of McManus's membership interest. In relevant part, it provided for McManus's voluntary disassociation as follows:

> "In the event that [McManus] should voluntarily elect to no longer practice dentistry under the joint dental practice with Dr. Richards, all percentages of Membership Interest purchased by [McManus] from [Richards], by way of this Agreement, shall be sold back to [Richards], under the terms of this Agreement, for a discounted price of fifty percent (50%) of the Purchase Price heretofore paid by [McManus] to [Richards]."

The Operations Agreement also provided McManus's involuntary disassociation from the practice as follows:

> "In the event that Richards finds cause to involuntarily disassociate McManus from the Company's dental practice, Richards shall give written notice to [McManus] of said involuntary disassociation decision setting for the last day of McManus' association with the Company and the joint dental practice. [Richards] then, within ninety (90) days of the last day of McManus' association, shall repurchase all of [McManus's] Membership Interest at one hundred percent (100%) of the Purchase Price heretofore paid to [Richards] by [McManus]. [Richards] reserves the right, at her sole discretion, to pay the price to [McManus], for the repurchase of [McManus's] Membership Interest, either as a single payment, or quarterly over a period of three years."

¶ 5    The parties also signed an "Insured Purchase Agreement and Member Interest Redemption Plan for Quad City Orthodontic Group L.L.C." (Buy-Sell Agreement), which set out the specific details regarding the sale and purchase of the practice's membership interest.

¶ 6    Over time, tensions developed between the parties. On April 27, 2016, Richards and the practice's office manager, Denise Coyne, met with McManus and informed her of Richards's intent to disassociate her from the practice. At that time, Richards owned a 55% interest in the practice and McManus a 45% interest. During the meeting, Richards gave McManus a "Purchase and Sale Agreement" and a document titled "Appendix A Dissolution of Purchase Agreement Entered January 1, 2012[,] by Seller Anne Bronwen Richards and Purchaser Michelle McManus." Following the meeting, Coyne changed the locks on both offices, reset the passwords to all computer-based information, and excluded McManus's access to patient records.

¶ 7    In May 2016, McManus filed a complaint in the circuit court of Rock Island County, requesting injunctive relief (count I) and alleging breach of contract (count II), breach of fiduciary duty (count III), and breach of the duty of good faith and fair dealing (count IV) against Richards.

¶ 8    In June 2016, Richards filed a motion for summary judgment. She asserted that the issue before the court involved "mere contract interpretation" as to whether she satisfied the provisions required by the Operations Agreement to disassociate McManus from the practice. Richards maintained that she satisfied those provisions, and thus, did not breach the parties' contract, fiduciary duties, or the duty of good faith and fair dealing. Accordingly, she maintained "there are no genuine issues of material fact that are disputed by the parties that would preclude an entry of this Motion for Summary Judgment."

¶ 9    In November 2016, McManus filed a "Resistance to Defendant's Motion for Summary Judgment," asserting, in relevant part, that Richards (1) breached the Operations Agreement by not providing written notice of the involuntary disassociation and by expelling McManus from the practice without cause and (2) violated her fiduciary duties of loyalty and care and her duty of good faith and fair dealing. In the alternative, McManus argued if the court found no genuine issue of material fact, Richards should be required to purchase her interest in the practice pursuant to the Buy-Sell Agreement.

¶ 10    Later that month, the trial court conducted a hearing on the motion for summary judgment. The central disagreement between the parties revolved around whether Richards had "cause" to involuntarily disassociate McManus from the practice, since the term was not defined in the Operations Agreement. According to Richards, the agreement did not "require any finding of wrongdoing in order for [her] to find cause for disassociation," and it did not "impose any requirements or standards that first must be satisfied for [her] to find cause to disassociate McManus." Richards maintained that "[c]ause under the [a]greement is just meaning a reason" and "the [a]greement clearly states that cause is determined by Richards, not a trier of fact or objective standard." In contrast, McManus asserted that the term "cause" must be given its legally significant meaning, not a simple dictionary definition. Ultimately, the trial court agreed with Richards's interpretation of "cause" and granted her motion for summary judgment.

¶ 11    In December 2016, McManus filed an amendment to her complaint, pursuant to a November 2016 order allowing her leave to do so in which she added a request for declaratory judgment (count V) and an accounting (count VI). McManus also filed a motion for a finding

pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). The trial court granted McManus's motion. She appeals.

¶ 12                                    ANALYSIS

¶ 13    On appeal, McManus asserts that the trial court erred in granting Richards's motion for summary judgment. Specifically, she challenges the court's (1) decision to assign the contract's term "cause" its simple dictionary meaning rather that "its established and precise legal meaning" and (2) finding that Richards gave her proper written notice of her intent to disassociate. McManus also challenges the court's grant of the motion for summary judgment on the grounds that it failed to consider her claims regarding breach of fiduciary duty or breach of the duty of good faith and fair dealing. Finally, she asserts that the court erred to the extent that it failed to consider the applicability of the Buy-Sell Agreement as it relates to the purchase of her membership interest in the practice.

¶ 14                    A. Summary Judgment and the Standard of Review

¶ 15    "Summary judgment is appropriate when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14 (quoting 735 ILCS 5/2-1005(c) (West 2010)). "In determining whether a genuine issue of material fact exists, the pleadings, depositions, admissions and affidavits must be construed strictly against the movant and liberally in favor of the opponent." *Adames v. Sheahan*, 233 Ill. 2d 276, 295-96 (2009). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* at 296. "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We review a trial court's entry of summary judgment *de novo*. *Id.*

¶ 16                            B. Contract Interpretation

¶ 17    At issue is whether a genuine issue of material fact exists regarding whether Richards possessed "cause" to involuntarily disassociate McManus from the practice. Resolution of this issue requires us to determine what definition applies to the term "cause" as provided by the Operations Agreement.

¶ 18    The primary objective when construing the language of a contract is to give effect to the intent of the parties, which is discerned from the language of the contract. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Gordon*, 241 Ill. 2d at 441. "[I]f the language of the contract is susceptible to more than one meaning, it is ambiguous." *Id.* However, "[a] contract is not rendered ambiguous merely because the parties disagree on its meaning." *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). "Rather, ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Nicor, Inc. v. Associated Electric &*

*Gas Insurance Services, Ltd.*, 223 Ill. 2d 407, 417 (2006). We review *de novo* a trial court's interpretation of a contract. *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill. App. 3d 234, 245 (2010).

¶ 19    The specific provision at issue here provides, in relevant part: "In the event that Richards *finds cause* to involuntarily disassociate McManus from the Company's dental practice, Richards shall give written notice to [McManus] of said involuntary disassociation decision setting for the last day of McManus' association with the Company and the joint dental practice." (Emphasis added.)

¶ 20    As she did below, Richards maintains that the term "cause," which is not defined in the Operations Agreement, must be given its common dictionary definition of "a reason for an action" or "that which produces a result; the reason for something." See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/cause (last visited Feb. 6, 2018); Black's Law Dictionary 221 (6th ed. 1990). Thus, she contends that "the contract as written sets forth a subjective standard and vested [her] with the contractual discretion to make the determination of whether she found a reason to disassociate McManus and, thereby end their contractual relationship."

¶ 21    On the other hand, McManus argues that the term "cause" must be given its "established and precise legal meaning" as "this is a complicated contract between two sophisticated people." She asserts that while cases defining "cause" in the employment context are instructive, the standard for "cause" in cases concerning limited liability companies must be even stricter.

¶ 22    After reviewing the Operations Agreement, considering each provision of the agreement in light of the others, we find the agreement requires Richards to possess more than a subjective reason for involuntarily disassociating McManus from the practice. Were we to accept Richards's definition of "cause," we would have to conclude that the agreement essentially permits Richards to exploit McManus's financial investment and professional services in order to build up her business, expel McManus from the practice one day shy of receiving her last payment, and then hold on to a portion of McManus's money over the next three years. Such a result is not only inequitable but absurd.

¶ 23    In the employment context, "cause" is defined as " 'some substantial shortcoming, recognized by law and public opinion as a good reason for termination.' " *Bishop v. Lakeland Animal Hospital, P.C.*, 268 Ill. App. 3d 114, 117 (1994) (quoting *Norman v. Board of Fire & Police Commissioners*, 245 Ill. App. 3d 822, 830 (1993)). Similarly, "discharge for cause" is defined as "reasonable, just or good cause, not discharge for any cause or discharge for bad cause." *Staton v. Amax Coal Co.*, 122 Ill. App. 3d 631, 634 (1984). In other words, an employer must often possess more than a subjective reason to discharge an employee. In this case, the parties do not have an employer-employee relationship but are members of a limited liability company. As such, we agree with McManus that the term "cause" as it is used in the Operations Agreement requires a higher standard than that which is typical in the employment context.

¶ 24    To that end, we are guided by subsection 35-45(6) of the Limited Liability Company Act (Act) (805 ILCS 180/35-45(6) (West 2016)). That section delineates events that may result in a member's involuntary expulsion by the court. Specifically, section 35-45(6) provides for a "member's expulsion by judicial determination" if the member (1) "engaged in wrongful conduct that adversely and materially affected the company's business," (2) "willfully or

persistently committed a material breach of the operating agreement or of a duty owed to the company or the other members under Section 15-3," or (3) "engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the business with the member." *Id.* Here, the record is devoid of any indication that McManus engaged in wrongful conduct or willfully or persistently committed a material breach of the operations agreement or of a duty she owed. In fact, the trial court never considered the issue, finding that any reason would do. We conclude, however, that whether Richards possessed sufficient cause to involuntarily disassociate McManus from the parties' practice depends on whether McManus's conduct made it unreasonable for the two to continue working together.

¶ 25 After reviewing the record, including the affidavits and depositions of the parties and staff, we find a genuine issue of material fact exists such that summary judgment is precluded. We note that while Richards testified to a number of conflicts between the parties, McManus was of the opinion that they "came up with solutions that accommodated or addressed all of [Richards] concerns" and that Richards "was getting everything she was asking for." Whether the status of the parties' relationship and/or McManus's conduct makes it not reasonably practicable or unreasonable for the two to continue working together, despite evidence of an otherwise profitable orthodontics practice, is a material fact that they dispute. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.

¶ 26 ## C. Remaining Issues

¶ 27 Because we reverse the trial court's grant of summary judgment, we decline to address the remaining issues on appeal.

¶ 28 ## CONCLUSION

¶ 29 For the foregoing reasons, we reverse the trial court's grant of summary judgment and remand for further proceedings.

¶ 30 Reversed and remanded.