2018 IL App (1st) 162972

FIRST DISTRICT
FIFTH DIVISION
March 30, 2018

No. 1-16-2972

|  |  |  |
|---|---|---|
| NORTHBROOK BANK & TRUST CO. AS SUCCESSOR IN INTEREST TO FIRST CHICAGO BANK & TRUST, | ) ) ) | Appeal from the Circuit Court of Cook County |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | No. 15 L 50452 |
| JOSEPH ABBAS, | ) |  |
|  | ) |  |
| Defendant-Appellant, | ) |  |
|  | ) |  |
| (and | ) |  |
|  | ) | Honorable |
| Alan L. Freeman, | ) | Raymond W. Mitchell, |
|  | ) | Judge Presiding. |
| Defendant). | ) |  |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Hall and Rochford concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, the circuit court of Cook County entered judgment in favor of

plaintiff, Northbrook Bank & Trust Company as successor in interest to First Chicago Bank &

Trust (plaintiff) on its breach of contract action.[1]  In so doing, the circuit court found defendant

Joseph Abbas (defendant) and his codefendant Alan Freeman (Freeman) in breach of a 1.8

---

[1] First Chicago Bank & Trust is not a party to this appeal.

million dollar loan agreement.[2] On appeal, defendant contends that the trial court erred by 1) allowing plaintiff to present certain documents not previously disclosed, 2) concluding plaintiff had standing, and 3) awarding plaintiff attorney fees. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3     Plaintiff filed its complaint alleging defendant and Freeman were in breach of a loan they had personally guaranteed and caused plaintiff damages in excess of $1.4 million dollars in unpaid principal, interest, and fees. Plaintiff further sought attorney fees and costs. The operative second amended verified complaint alleged that defendant and Freeman had entered into a term loan agreement with First Chicago Bank & Trust whereby they received $1,880,000. Defendant and Freeman were required to make monthly interest payments and to repay the loan in full by September 16, 2015. Germane to this appeal, four mortgages were pledged as collateral for the loan on certain properties, two of which were located in Illinois, one in Michigan, and one in Florida. In addition, Freeman signed a pledge agreement in which he pledged 44,500 shares of Facebook stock as collateral. The pledge agreement provided that selling these shares without first notifying First Chicago Bank & Trust would result in a breach of the loan agreement.

¶ 4     Regarding its standing, plaintiff alleged that subsequent to the loan agreement the Illinois Department of Financial and Professional Regulation, Division of Banking closed First Chicago Bank & Trust and appointed the Federal Deposit Insurance Corporation (FDIC) as the receiver. Thereafter, on July 8, 2011, the FDIC and plaintiff entered into a purchase and assumption agreement whereby plaintiff became the owner of a substantial portion of the assets of First Chicago Bank & Trust, including the loan agreement at issue in this case.

---

[2] Defendant Alan Freeman is not a party to this appeal.

¶ 5    The operative complaint further alleged the following acts of default occurred.  In July 2015, Freeman sold his Facebook shares in violation of the pledge agreement.  In addition, defendant and Freeman failed to make interest payments for July and August 2015 in violation of the terms of the loan agreement.  Then, when the loan matured, defendant and Freeman did not pay the amounts which were due and owing in full.

¶ 6    The following documents were attached as exhibits to the operative complaint, 1) the first page of the purchase and assumption agreement between the FDIC and plaintiff, 2) the loan agreement, 3) the pledge agreement, and 4) a notice of default.

¶ 7    In response, defendant filed an unverified answer to the complaint denying he breached the loan agreement.  Thereafter, plaintiff served defendant with interrogatories and a document production request; however, neither were answered prior to trial.

¶ 8    After it appeared the parties would not settle, the trial court set the matter for a bench trial to commence on June 1, 2016.  Subsequently, plaintiff filed a motion for summary judgment.  The parties entered into a briefing schedule, but before the hearing on the motion and three weeks prior to trial, defense counsel withdrew.  Despite the trial court's best efforts to keep the trial on schedule, it ultimately granted defendant's emergency motion to continue and reset the bench trial for August 15, 2016.

¶ 9    In the meantime, the parties briefed the motion for summary judgment, argument was heard, and the trial court issued a written memorandum opinion denying the motion for summary judgment. The trial court found there was a genuine issue of material fact as to whether the purchase and assumption agreement between the FDIC and plaintiff included the loan at issue. The trial court expressly observed that the singular page of the purchase and assumption agreement provided by plaintiff only mentioned that "certain" assets and deposits were being

assumed by plaintiff and plaintiff did not provide any documentation that conclusively demonstrated it had assumed defendant's loan.

¶ 10     Less than a week before trial, defendant filed numerous motions including 1) a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)), 2) a motion to continue the trial, 3) a motion for leave to add an affirmative defense, 4) a motion *in limine* to bar plaintiff from introducing any evidence it had not already produced, and 5) a motion *in limine* to bar any evidence related to plaintiff's ownership of the loan.  The trial court denied the motion to dismiss and the motion to continue.  The trial court, however, granted defendant leave to amend the answer to assert the affirmative defense of lack of standing, but reserved judgment on the motions *in limine*.  The matter then proceeded to trial where the following testimony was elicited.

¶ 11     Jeff Galus, senior vice president of Wintrust Financial, testified that plaintiff is a subsidiary of Wintrust Financial and he personally managed the loan at issue in this case.  Galus testified to the terms of the loan agreement as set forth in the complaint and further explained that First Chicago Bank & Trust originated the loan but was later shut down and the FDIC became the receiver.  Subsequently, plaintiff acquired the loan from the FDIC through a purchase and assumption agreement in July 2011.  In December 2013, the loan was modified pursuant to a request from Freeman for plaintiff to release the mortgage on one property that was collateral for the loan agreement in exchange for a $500,000 principal payment.  Thereafter, two new pieces of property (one located in Cook County and the other in Lake County) were substituted as collateral for the one property previously identified in the loan agreement.  According to Galus, plaintiff was listed as the mortgagee on these mortgages.

¶ 12     In regards to the default on the loan, Galus testified that monthly interest payments were

made on the loan to plaintiff from July 2011 (when plaintiff acquired the loan) until June 2015. No payments were made for July and August 2015, nor was the full principal balance paid in full when the loan matured on September 16, 2015.

¶ 13    Galus further testified regarding the numerous documents related to the loan at issue which he averred were kept in the ordinary course of business by plaintiff. He further testified that he had access to and was familiar with the documents. These records included the purchase and assumption agreement, the schedule of loans, the loan documents, an allonge, and the history of the transactions involving the loan.

¶ 14    Regarding the purchase and assumption agreement, Galus testified that it was a true and accurate copy, but was not entirely complete because parts of it were redacted to preserve confidentiality. Galus also testified that the schedule of loans (which was referenced in the purchase and assumption agreement) was a true and accurate copy of the document. The schedule of loans identified the loan at issue in this case as being one of the assets acquired by plaintiff through the FDIC's receivership of First Chicago Bank & Trust. In addition, Galus testified that plaintiff was provided a power of attorney which was granted at the time of the acquisition of the loan from the FDIC. Galus further testified that in regards to this loan and pursuant to the power of attorney he executed an allonge on behalf of the FDIC. Galus testified that the allonge which was provided was a true and accurate copy. While the allonge was not dated, it was signed by Galus as attorney in fact for the FDIC.

¶ 15    Galus also testified he personally prepared a payoff statement which indicated the amounts due as of August 15, 2016, included: $1,380,000 in principal; $132,020 in interest (with a per diem of $306.67); $803.47 in late fees, and $3,807 in other fees associated with the loan for a total of $1,516,630.47.

¶ 16     On cross-examination, Galus testified he first became familiar with the loan in December 2013 and admitted he did not participate in the FDIC transaction. Galus further acknowledged that the allonge was a one page document, which was not attached to the note. Regarding the allonge, Galus testified he was authorized to sign the allonge on behalf of the FDIC as its attorney in fact via a power of attorney. Galus, however, did not have a copy of the power of attorney and did not know the date it was executed or when it expired. Galus further testified he signed the assignment and allonge in November or December 2015. Galus also testified that the purchase and assumption agreement does not include the schedule of loans. Galus explained, however, that it is not the FDIC's practice to include a schedule of loans with the purchase and assumption agreement.

¶ 17     On redirect, Galus testified that he personally managed hundreds of loans from other failed banks. In all those transactions a purchase and assumption agreement was utilized and on occasion was a schedule of the assumed assets attached.

¶ 18     Next, Freeman testified for the defense that initially his loan was with First Chicago Bank & Trust. Subsequently it was transferred to plaintiff and he worked directly with Kevin Fraley (one of plaintiff's loan managers) and then Galus. Freeman testified he had a conversation with Fraley wherein Freeman disclosed that he sold some Facebook stock. In response, Fraley indicated selling the stock was "okay" because there was "so much other collateral." No documents, however, were ever signed evidencing this conversation. Freeman also testified that he made monthly interest payments to plaintiff for four-and-a-half years. The defense then rested and the trial court took the matter under advisement.

¶ 19     While the trial court was still considering the matter,  plaintiff filed a petition for attorney fees, seeking $160,712.40 in fees and $15,359.26 in costs for a total of $176,071.66 pursuant to a

fee-shifting provision in the loan agreement. Of these monetary sums being requested, $76,957 in fees and $5000 in costs were incurred during the course of the litigation. The remaining attorney fees plaintiff sought were incurred prior to litigation and in the four separate foreclosure actions associated with the loan agreement. Plaintiff attached to its petition, in pertinent part, 1) detailed time entries related to a) the 2013 modification of the loan agreement, b) the instant lawsuit, c) the Cook County foreclosure case, d) the Lake County foreclosure case, e) the Michigan foreclosure case, and f) the Florida foreclosure case and 2) an affidavit of Edward L. Filer attesting to the hourly rates of those attorneys working on these matters and the amount of time billed.

¶ 20　After having considered all of the evidence presented by the parties, the trial court thereafter issued a written memorandum and opinion finding in favor of plaintiff on its breach of contract claim. The trial court specifically found that plaintiff established there was a valid loan agreement between defendant, Freeman, and First Chicago Bank & Trust and that defendant and Freeman defaulted under the terms of the loan by failing to make monthly interest payments and failing to pay the outstanding balance on the maturity date.[3] The trial court further found that plaintiff established it was a successor in interest to the loan agreement, having acquired the loan from the FDIC through the purchase and assumption agreement after First Chicago Bank & Trust went into receivership. In issuing its ruling, the trial court also indicated that defendant's motion *in limine* to bar evidence outside the trial exhibit list provided in June 2016 was denied.

¶ 21　The trial court further granted plaintiff's petition for attorney fees finding the language of the loan agreement permitting attorney fees and costs as "broad." Furthermore, trial court noted

---

[3] The trial court further found that Freeman testified credibly regarding plaintiff's oral representations about the sale of his Facebook stock and accordingly did not find it was an act of default.

the petition and the supporting affidavit and invoices, setting forth the attorney fees and costs were reasonable and recoverable. This appeal followed.

¶ 22                                    Mootness

¶ 23    At oral argument, when questioned regarding the status of the related foreclosure matters, plaintiff's counsel informed the court that all of the amounts due and owning had been satisfied, including attorney fees and postjudgment interest and the foreclosure suits resolved. As a result of this revelation, we ordered the parties to file supplemental briefs addressing the question of whether the matter before the court was moot. Accordingly, we first turn to address whether the matter is moot in light of the full satisfaction of the judgment.

¶ 24    "This court will not review cases merely to establish a precedent or guide future litigation." *Madison Park Bank v. Zagel*, 91 Ill.2d 231, 235 (1982). The fact that a case is pending on appeal when events render an issue moot does not alter this conclusion. *Dixon v. Chicago and North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992); *Bluthardt v. Breslin*, 74 Ill. 2d 246, 250 (1979). An issue is moot if no actual controversy exists or where events transpire which make it impossible for the court to grant effectual relief. *Dixon*, 151 Ill. 2d at 116. Nonetheless, when an intervening event occurs making it impossible for a reviewing court to grant relief to any party, the case is rendered moot because a ruling on the issue cannot have any practical effect on the controversy. *In re Tekela*, 202 Ill. 2d 282, 292-93 (2002). In this instance, we ordered the parties to submit with their supplemental briefs regarding the mootness issue documentation they believed to be relevant. We observe that a reviewing court can take judicial notice of such events or facts which, while not appearing in the record, disclose that an actual controversy no longer exists between the adverse parties. *Dixon*, 151 Ill. 2d at 116-17.

¶ 25    Here, the parties do not dispute that while the appeal was pending the judgment at issue

was fully satisfied and the documents produced by the parties support this contention. In Illinois, "it is well established that the payment or satisfaction of a money judgment by a judgment debtor does not bar the prosecution of *** an appeal by such judgment debtor." *Pinkstaff v. Pennsylvania R.R. Co.*, 31 Ill. 2d 518, 523 (1964); *In re Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 28; *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 118 Ill. App. 3d 163, 173 (1983) ("The payment of a judgment does not preclude that party from appealing from the judgment."). When a judgment has been voluntarily paid or its benefits accepted, the basis for the appeal is waived. *Mirar Development, Inc. v. Kroner*, 308 Ill. App. 3d 483, 486 (1999) (citing *County of Cook v. Malysa*, 39 Ill. 2d 376, 379 (1968) ("[T]he general rule in civil cases [is] that when a judgment has been voluntarily paid or its benefits accepted the question becomes moot."). Thus, the question here is, under these particular set of facts, is whether the satisfaction of the judgment was compulsory or voluntary.

¶ 26   Plaintiff contends that the payment of the judgment was voluntary, and therefore the matter is moot. According to plaintiff, no appeal bond was posted by defendant and upon satisfaction of the judgment the four mortgage foreclosure cases referenced were dismissed with prejudice, the mortgages that were pledged as collateral were released, and the recorded judgment was released. Plaintiff asserts that had the payment of the judgment not been voluntary, it would not have released the mortgages that were collateral for the loan agreement. Plaintiff maintains that the release of its security interest in the mortgages should be considered a "supervening event" which moots the appeal as defendant and Freeman received and accepted the benefit of those mortgages being released.

¶ 27   In response, defendant argues that the satisfaction of the judgment was compulsory where defendant was faced with a judgment order, collection proceedings, and a wage garnishment.

Defendant further asserts that he was obligated to pay the judgment where statutory interest would continue to accrue unless it was paid in full.[4]

¶ 28    We conclude the satisfaction of the judgment in this case was compulsory. After the judgment was entered, plaintiff commenced collection proceedings, which included citations to discover assets and a request for defendant's wages to be garnished. Plaintiff even filed a motion to compel citation examination and production before the circuit court. Once the judgment was paid in July 2017, the citation proceedings were dismissed. Under these circumstances, it is evident that the payment of the judgment was compulsory in nature and thus the payment of the judgment does not render this appeal moot. See *Sobieski*, 2013 IL App (2d) 111146, ¶ 33 (appeal not moot where the husband made payments pursuant to a court order and the wife could have sought an execution of the judgment); *Long v. Tranka*, 146 Ill. App. 3d 428, 431 (1986) (appeal not moot where the defendant paid the judgment in full under threat of court order).

¶ 29    Furthermore, we observe that the supplemental briefing did not adequately indicate who actually paid the judgment or, if the judgment was paid by both defendant and Freeman, or how much each party contributed. Where, as here, defendant and Freeman are jointly and severably liable for a judgment, a party who pays more than their share of the joint indebtedness can maintain an action for contribution from his or her codefendant. *Ruggio v. Ditkowsky*, 147 Ill. App. 3d 638, 642 (1986). Thus, even if we were to find that this appeal is moot, a finding which we do not render, we could not dismiss this appeal and leave in effect a potentially erroneous order which might adversely affect the rights of the parties. See *Midwest Bank & Trust Co. v. Roderick*, 132 Ill. App. 3d 463, 466-67 (1985). Accordingly, we now turn to examine the merits

---

[4] We observe that defendant raises new arguments in his supplemental response brief regarding the propriety of postjudgment attorney fees paid to plaintiff. As this issue was not raised in his opening brief, we decline to address it and consider the issue to be forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017).

of this appeal.

¶ 30                                              ANALYSIS

¶ 31     On appeal, defendant contends that the trial court erred by 1) allowing plaintiff to present

certain documents not previously disclosed, 2) concluding plaintiff had standing, and 3)

awarding plaintiff attorney fees.  Prior to addressing defendant's claims, we acknowledge that

both parties asserted that portions of the other party's brief should be stricken for varied reasons.

We, however, decline to strike any portion of either party's brief.  We now turn to consider

defendant's arguments.

¶ 32                                         Undue Surprise

¶ 33     Defendant first contends that the trial court should not have allowed plaintiff to present

certain documents demonstrating the transfer of ownership by the FDIC to plaintiff during the

trial because these documents were not previously disclosed and caused him undue surprise.

¶ 34     We initially note that, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. July 1,

2017), defendant does not set forth the applicable standard of review for his unique claim of

error.  We observe that defendant is not alleging that the trial court abused its discretion when it

denied his motion *in limine* regarding these documents, nor is he arguing that these documents

were inadmissible.  Instead, he frames his claim as a type of discovery violation, yet at the same

time acknowledges that he did not engage in discovery so the Illinois Supreme Court Rules do

not apply.  "A reviewing court is entitled to have the issues clearly defined and supported by

pertinent authority and cohesive arguments; it is not merely a repository into which an appellant

may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an

advocate or seek error in the record."  *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009).

Consequently, we are not obliged to make his arguments for him; therefore, whether we consider

his claim of error to be one that is premised on a discovery violation or the improper admission of evidence, the standard of review is the same. Accordingly, we turn to review defendant's claims for an abuse of discretion. See *In re J.D.*, 332 Ill. App. 3d 395, 403 (2002); *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 408 (2005).

¶ 35 The goal of the discovery process in Illinois is full disclosure. *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 13. To that end, "[t]he objectives of pretrial discovery are to enhance the truth-seeking process, to enable attorneys to better prepare for trial, to eliminate surprise[,] and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties." *D.C. v. S.A.*, 178 Ill. 2d 551, 561 (1997).

¶ 36 Defendant asserts that the late tendering of these documents prejudiced him because it provided him with no time to prepare a defense to the documents. Defendant, however, chose not to participate in pretrial discovery, placing the entire burden on plaintiff, and now complains that his failure to do so has lead to an unjust result. In addition, our review of the record reveals that defendant was not surprised when plaintiff produced the documents evidencing its ownership of the loan agreement for use during the August trial. In fact, defendant was prepared to challenge plaintiff's standing at trial. The record reflects that defendant was fully aware that plaintiff would be presenting such documentation where, just prior to the August trial, the trial court denied plaintiff's motion for summary judgment finding there was a genuine issue of material fact as to plaintiff's standing. Specifically, the trial court observed that the single page of the purchase and assumption agreement was not convincing evidence. Thus, it could not have been a surprise when plaintiff produced the complete (albeit redacted) purchase and assumption agreement for the August trial. Second, a week before the August trial, defendant filed a motion requesting leave to amend its answer to include the affirmative defense of lack of standing

(which the trial court subsequently granted on the day trial commenced). Therefore, defendant could not have been caught unawares when plaintiff produced documents evidencing its standing thereafter.

¶ 37    We find the cases on which defendant relies to be inapposite. Defendant asserts that *U.S. Bank, N.A. v. Kosterman*, 2015 IL App (1st) 133627, ¶ 13, supports his position because it "held that although the plaintiff claimed the records were too numerous to make them available to defense counsel, the defendants were entitled to at least some access to the records, and not to untimely disclose documents that would hinder the defendants' rebuttal opportunity." *Kosterman*, however, is wholly distinguishable from the case at bar. First, unlike defendant here, the *Kosterman* defendants raised the affirmative defense of lack of standing in their answer to the complaint. *Id.* ¶ 8. Second, the parties engaged in formal discovery while the plaintiff's motion for summary judgment was being briefed, which included document and deposition requests. *Id.* ¶¶ 12-14. Third, the *Kosterman* plaintiff failed to comply with the defendants' discovery requests asserting that the documents it needed to produce were too voluminous and did not provide the defendants with sufficient access to the documents in preparing their response to the plaintiff's motion for summary judgment. *Id.* ¶ 13. Fourth, the *Kosterman* plaintiff based its failure to participate in discovery on the erroneous ruling of the trial court striking the defendants' affirmative defense. *Id.* ¶ 15. Accordingly, it was under these circumstances that the reviewing court concluded that the defendants "never even had an opportunity to explore their defenses" and ultimately reversed the trial court's dismissal of their affirmative defenses. *Id.* ¶¶ 15, 20.

¶ 38    Defendant also relies on *Fortae v. Holland*, 334 Ill. App. 3d 705 (2002). In *Fortae*, although the defendants timely made the disclosure of their opinion witness, within a week of the

13

trial and after the disclosure date passed, the defendants filed supplemental discovery notifying the plaintiff that their opinion witness would be testifying to new material facts. *Id.* at 712. The trial court denied the defendants' request, finding it to be untimely. *Id.* The reviewing court affirmed. *Id.* at 713. Unlike the *Fortae* defendants, in the case at bar plaintiff did not seek to disclose new expert opinions on the day of trial. Consequently, *Fortae* is inapposite.

¶ 39    We conclude that plaintiff's supplementation of its trial exhibits to include documents that reflected its ownership of the loan did not prejudice defendant where he was the one who placed plaintiff's standing at issue and then failed to request discovery. Therefore, the trial court was within its discretion when it allowed plaintiff to utilize the documents during the trial. Defendant, however, does contest the admissibility of these documents, which we next address.

¶ 40                           The Manifest Weight of the Evidence

¶ 41    Defendant challenges the trial court's judgment finding in favor of plaintiff on the breach of contract action. The trial court's findings are entitled to great weight and will not be reversed unless they are against the manifest weight of the evidence. *Voutiritsas v. Intercounty Title Co. of Illinois*, 279 Ill. App. 3d 170, 183 (1996); *Resurgence Capital, LLC v. Kuznar*, 2017 IL App (1st) 161853, ¶ 35. "A finding is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the finding appears to be unreasonable, arbitrary, or not based on the evidence." *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126, 135 (2001).

¶ 42    In Illinois, a breach of contract claim consists of: 1) the existence of a valid and enforceable contract, 2) breach of the contract by the defendant, 3) performance by the plaintiff, and 4) resulting injury to the plaintiff. *Lindy Lu LLC v. Illinois Central R.R. Co.*, 2013 IL App (3d) 120337, ¶ 21.

¶ 43    Here, defendant does not argue that the loan agreement was not valid and enforceable, or that he did not breach the contract, or even that plaintiff did not perform.  Instead, defendant solely maintains that the trial court's ruling was against the manifest weight of the evidence where the evidence did not demonstrate that plaintiff was the rightful owner of the loan.  For the reasons that follow, we disagree and conclude the trial court's finding in regard to plaintiff's standing was not against the manifest weight of the evidence.

¶ 44    "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit" and "assures that issues are raised only by those parties with a real interest in the outcome of the controversy."  *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999).  "[S]tanding requires some injury in fact to a legally cognizable interest."  *Id.*  Because standing is an affirmative defense, "it is the defendant's burden to prove that the plaintiff does *not* have standing."  (Emphasis in original.)  *Parkway Bank v. Korzen*, 2013 IL App (1st) 130380, ¶ 24.  In other words, "[i]t is not the plaintiff's burden to prove it does have standing."  *Id.*

¶ 45    Defendant does not raise an argument as to how plaintiff does not have standing in this case.  Instead, defendant attacks the admissibility of the documents plaintiff introduced at trial that evidenced its ownership of the loan.  Defendant first argues that plaintiff failed to provide an adequate foundation for the following business records:  (1) the purchase and assumption agreement; (2) the schedule of loans; (3) the loan agreement; (4) the allonge; and (5) the loan transaction history (collectively loan records).  The determination that records are admissible as business records rests within the sound discretion of the circuit court.  *In re Estate of Weiland*, 338 Ill. App. 3d 585, 600 (2003).  Thus, the admission of business records is reviewed for an abuse of discretion.  *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 13.  An abuse

15

of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or where there is an application of impermissible legal criteria. *Kimble*, 358 Ill. App. 3d at 408.

¶ 46                                *Business Records*

¶ 47    To admit business records into evidence as an exception to the general rule excluding hearsay, the proponent must lay a proper foundation by demonstrating that the records were "made (1) in the regular course of business, and (2) at or near the time of the event or occurrence." *Gulino v. Economy Fire & Casualty Co.*, 2012 IL App (1st) 102429, ¶ 27; Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).  Similarly, Illinois Rule of Evidence 803(6) (eff. Jan. 1, 2011) provides for the admission of "records of regularly conducted activity" where the records consist of:

> "A memorandum, report, record, or data compilation, in any form, of acts [or] events *** made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness ***."

¶ 48    "The theory upon which entries made in the regular course of business are admissible as an exception to the hearsay rule is that 'since their purpose is to aid in the proper transaction of the business and they are useless for that purpose unless accurate, the motive for following a routine of accuracy is great and the motive to falsify nonexistent.' " *Kimble*, 358 Ill. App. 3d at 414 (quoting Michael H. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.10, at 817 (7th ed. 1999)).

¶ 49    In the context of computer-generated records, it must be established that the equipment

16

used is the industry standard, the entries were made in the regular course of business, at or near the time of the transaction, and the sources of information, method and time of preparation indicate their trustworthiness and justify their admission. *Riley v. Jones Brothers Construction Co.*, 198 Ill. App. 3d 822, 829 (1990).

¶ 50    In this case, defendant mainly challenges Galus' personal knowledge of the documents specifically those generated prior to his management of the loan (*i.e.* the purchase and assumption agreement, the schedule of loans, and the loan agreement). Galus' testimony established that he personally managed the loan on behalf of plaintiff. Galus further testified that the loan records at issue were kept in the ordinary course of business by the plaintiff and, as the manager of the loan, he had access to and was familiar with those records. See *Weiland*, 338 Ill. App. 3d at 600 ("A sufficient foundation for admitting records may be established through testimony of the custodian of records or another person familiar with the business and its mode of operation."). Lastly, Galus testified the loan records were true and accurate copies, although he did indicate that portions of the purchase and assumption agreement were redacted for reasons of confidentiality. While defendant maintains that Galus was not party to the negotiations with the FDIC or present when certain of the loan records were initially created, there is no foundational requirement that he be familiar with the records before litigation arose or have personally made the entries into the computer system. *US Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 29. Indeed the lack of personal knowledge by the maker affects the weight afforded the evidence, but not its admissibility. *Weiland*, 338 Ill. App. 3d at 601. According to Rule 236, it is the business record itself, not the testimony of a witness who makes reference to the record, which is admissible. *Champaign Nat. Bank v. Babcock*, 273 Ill. App. 3d 292, 298 (1995). We therefore conclude this testimony was sufficient to establish he had personal

knowledge of the documents at issue in this case. See *Avdic*, 2014 IL App (1st) 121759, ¶¶ 26-27 (finding the affiant had the requisite personal knowledge to establish the foundation for certain loan documents).

¶ 51 Defendant further argues that plaintiff was unable to properly authenticate the loan transaction history where Galus admitted he did not have knowledge of the process by which it was generated. Our review of the record reveals that Galus' testimony satisfied the foundational requirements for the admission of these computer generated records. Galus did not testify that he was without knowledge of the process; he testified that the computer system was maintained by Wintrust Technology Services and the loan payments were inputted by the loan operations department. While he testified he did not personally input the data into the computer, as discussed above, such testimony is not necessary to establish that a document is a business record. See *Champaign Nat. Bank*, 273 Ill. App. 3d at 298. Accordingly, we conclude the loan records were properly admitted as business records.

¶ 52                                   *The Allonge*

¶ 53 Defendant next argues that the trial evidence did not establish plaintiff was the rightful owner of the loan agreement due to alleged deficiencies in the allonge. According to defendant, the allonge is defective because it: (1) was created and produced after the lawsuit was initially filed; (2) is not signed, dated, or witnessed; and (3) is not attached to the original note or any other document. Defendant further asserts that plaintiff failed to produce Galus' power of attorney that vested him with the authority to sign the allonge on the FDIC's behalf.

¶ 54 In response, plaintiff contends that any argument related to the allonge is a red herring because an allonge is not necessary to prove ownership of the loan. Plaintiff maintains that its ownership is evidenced via the purchase and assumption agreement whereby it became the

owner of substantially all of the assets of First Chicago Bank & Trust. Plaintiff further asserts that, regardless, Galus had the authority to sign the allonge through a power of attorney. Galus testified he reviewed the power of attorney, which authorized him to sign on behalf of the FDIC as the receiver for First Chicago Bank & Trust as its attorney in fact.

¶ 55    In reply, defendant argues that standing must exist when the suit is filed, citing *Deutsche Bank Nat'l Trust Co. v. Gilbert*, 2012 IL App (2d) 120164, and *U.S. Bank Trust Nat'l Ass'n for Queen's Park Oval Asset Holding Trust v. Lopez*, 2017 IL App (2d) 160967. Defendant maintains that, pursuant to Galus' testimony, the allonge was created after the lawsuit was initiated, and thus plaintiff did not have standing when it commenced the lawsuit.

¶ 56    We find the cases cited by defendant to be inapposite. First, *Gilbert* and *Lopez* pertained to mortgage foreclosure causes of action, which are governed by the Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2014)). While the Foreclosure Law includes a provision regarding the pleading requirements for standing (see 735 ILCS 5/15-1504(a)(3)(N) (West 2014)), this matter, in contrast, was commenced as a breach of contract action and is not governed by any such statutory pleading requirements. Second, in *Gilbert* and *Lopez*, the defendants presented documentary evidence that the note and mortgage were assigned to the plaintiff-mortgagee after the lawsuit commenced. See *Gilbert*, 2012 IL App (2d) 120164, ¶ 17; *Lopez*, 2017 IL App (2d) 160967, ¶ 20. These matters did not involve ownership via a purchase and assumption agreement, which is the issue in the case at bar.

¶ 57    While Galus did admit that the allonge was created in late 2015 after the lawsuit was commenced, the other evidence presented by plaintiff established it owned the loan prior to the commencement of the lawsuit. Thus, it is inconsequential whether or not the allonge was properly admitted into evidence by the trial court. Defendant here raises the issue of lack of

standing as an affirmative defense.  As such, it was defendant's burden to prove plaintiff lacked standing.  *Parkway Bank*, 2013 IL App (1st) 130380, ¶ 24.

¶ 58    Our review of the record reveals that defendant failed to present a *prima facie* case that plaintiff lacked standing at the time it filed suit.  Unlike the defendant in *Gilbert*, defendant did not demonstrate through any evidence that plaintiff did not have an interest in the loan prior to commencing the lawsuit.  See *cf. Gilbert*, 2012 IL App (2d) 120164, ¶ 21.  Indeed, plaintiff demonstrated that it became the owner of the loan through the purchase and assumption agreement.  The schedule of the loans transferred from First Chicago Bank & Trust to plaintiff via the FDIC was presented at trial and identified the loan at issue as one of the loans being transferred to plaintiff.  See 810 ILCS 5/203(a) (West 2014) (An instrument is transferred by delivery of the instrument by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.).  Furthermore, the evidence established that plaintiff began managing the loan in 2011 and that it subsequently modified the loan in 2013 to change the collateral for the loan.  In order to modify the loan, Freeman testified that he made a $500,000 principal payment to plaintiff.  He further testified that he made payments according to the loan documents to plaintiff until the date of default.  It was defendant's burden to prove plaintiff lacked standing, and defendant failed to produce any evidence in support of this affirmative defense.  See *Parkway Bank*, 2013 IL App (1st) 130380, ¶ 24.  Accordingly, we conclude that the trial court's finding that plaintiff had standing to bring the lawsuit was not against the manifest weight of the evidence.

¶ 59                                                    Attorney Fees

¶ 60    Defendant maintains that the trial court abused its discretion and the attorney fee award should be vacated where 1) plaintiff recovered attorney fees and costs from the loan modification

and unrelated pending cases in other jurisdictions and 2) the fee amounts were unreasonable.

¶ 61    We first address our standard of review.  Generally, a trial court has broad discretion to award attorney fees and its decision will not be disturbed on appeal absent an abuse of that discretion.  *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2017 IL App (1st) 170680, ¶ 32.  Yet, in cases in which a party contests the trial court's authority to award attorney fees under the terms of a contract, our standard of review is twofold.  *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 225 (2007).  First, to the extent that the trial court interpreted the terms of the contract, our review is *de novo*.  *Work Zone Safety, Inc. v. Crest Hill Land Development, L.L.C.*, 2015 IL App (1st) 140088, ¶ 28.  Second, where the trial court applied the terms of the contract to the facts, our review is based on an abuse of discretion standard.  *Forest Preserve District of Cook County*, 2017 IL App (1st) 170680, ¶ 32.  Defendant also challenges whether the trial court correctly ascertained that the attorney fee provision in the loan agreement included certain specific attorney fees, thus we examine the language of the loan agreement *de novo*.

¶ 62    "[O]ur supreme court has long recognized, Illinois follows the 'American rule' which prohibits prevailing parties from recovering their attorney fees from the losing party absent an express statutory or contractual provision."  *Id.* ¶ 31.  Although the parties to a contract may alter this rule, such contract provisions regarding attorney fees should be strictly construed and enforced at the discretion of the trial court.  *Powers v. Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d 511, 515 (2001).  The primary goal of contract interpretation is to give effect to the intent of the parties, as shown by the language in the contract.  *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App. 3d 678, 685 (2009).  In determining the intent of the parties, a court must consider the document as a whole and not focus on isolated portions. *Premier Title Co. v.*

*Donahue*, 328 Ill. App. 3d 161, 164 (2002). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). That language should be given its plain and ordinary meaning, and the contract enforced as written. *Id.*

¶ 63    Here, the loan agreement contained the following fee-shifting provision:

> "**Attorneys' Fees.** Each Borrower shall reimburse the Bank for any reasonable costs and attorneys' fees incurred by the Bank in connection with the enforcement or preservation of any rights or remedies under this Agreement and any other documents executed in connection with this Agreement, and in connection with any amendment, waiver, 'workout' or restructuring under this Agreement. In the event of a lawsuit, the prevailing party is entitled to recover costs and reasonable attorneys' fees incurred in connection with the lawsuit, as determined by the court or arbitrator. *** To the extent permitted by law, as used in this paragraph, 'attorneys' fees' includes the allocated costs of the Bank's in-house counsel, and 'costs' shall include consultants and experts."

In addition, the loan agreement further contains an "Expenses" provision (section 2.2) that references the payment of attorney fees:

> "**Expenses.** Each Borrower agrees to pay all reasonable costs and expenses incurred by the Bank in connection with administering the Loan after the funding date. Such costs and expenses include, but are not limited to, charges for title insurance, recording and escrow charges, appraisal fees, fees for environmental services, reasonable attorneys' fees and any other reasonable fees and costs for services, regardless of whether such services are furnished by the Bank's employees or by independent contractors."

¶ 64    We are required to strictly construe a contractual provision for attorney fees. *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill. App. 3d 234, 254-55 (2010). "That is, we construe the fee-shifting provision 'to mean nothing more—but also nothing less—than the letter of the text.' " *Id.* (quoting *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952 (2004)).

¶ 65    Defendant first argues that the trial court improperly construed the fee-shifting provision to include fees generated from the loan modification that occurred in 2013. We disagree. The fee-shifting provision provides that each borrower "shall" reimburse plaintiff for any reasonable attorneys fees incurred regarding "any other documents executed in connection with this Agreement, and in connection with any amendment, waiver, 'workout' or restructuring under this Agreement." The record demonstrates that in 2013 Freeman wanted to sell certain properties that had been designated as collateral for the loan agreement. Plaintiff agreed to release its interest in the properties provided that Freeman make a $500,000 principal payment on the loan and also substitute different properties as collateral. Freeman did so, and new mortgages, which expressly referenced the loan agreement, were drafted, executed, and recorded. The billable hours generated for this loan modification were included in the fee petition presented to the trial court. These actions clearly fall within the "workout" language of the fee-shifting provision. Moreover, the fee-shifting provision includes a definition of "attorneys' fees" which "includes the allocated costs of the Bank's in-house counsel," the individual who would likely be responsible for modifying the loan.

¶ 66    Defendant next asserts that the trial court erred when it determined that the fee-shifting provision also includes the attorney fees and costs of the foreclosure litigation in Cook County, Lake County, Michigan, and Florida. Relying on *Bank of America v. WS Management, Inc.*,

23

2015 IL App (1st) 132551, defendant asserts that the trial court erred when it allowed plaintiff to recover fees in other proceedings with claims that are not identical to the claims in the present case.

¶ 67    Defendant's interpretation of *WS Management, Inc.* is misguided.  Defendant specifically claims that the appellate court vacated and remanded the trial court's determination regarding the award of attorney fees in part because "the creditor was attempting to seek fees in a prior turnover proceeding where the issues decided were not identical to the creditor's claims in the subsequent collection action."  In fact, the reviewing court vacated and remanded, not because the attorney fee judgment was unenforceable, but because the trial court's ruling itself was deficient.  *Id.* ¶ 123.  The reviewing court thus "decline[d] to speculate how broad the reach of the Kansas judgment and loan documents [were] without some explanation from the trial court."  *Id.*  The reviewing court also identified the mistakes in the proceedings below, including the failure to conduct an evidentiary hearing on the reasonableness of the fees.  *Id.* ¶ 127.  The reviewing court further observed that the trial court's order awarding the plaintiff attorney fees was also deficient because it gave no indication as to the basis for awarding fees or whether it considered the many factors at work in deciding whether the attorney fee award was reasonable.  *Id.* ¶ 128.  Thus, the reviewing court vacated the attorney fee award and remanded for further proceedings for the trial court to (1) conduct an evidentiary hearing and (2) explain its basis for awarding attorney fees.  *Id.*  In contrast to defendant's claims, the trial court's order in *WS Management, Inc.* was not vacated and remanded due to the trial court awarding attorney fees in other proceedings with claims that were not identical to the claims in the present case.

¶ 68    In this case, the language of the fee-shifting provision provides that, "Each Borrower shall reimburse the Bank for any reasonable costs and attorneys' fees incurred by the Bank in

connection with the enforcement or preservation of any rights or remedies under this Agreement and any other documents executed in connection with this Agreement, and in connection with any amendment, waiver, 'workout' or restructuring under this Agreement." Here, plaintiff sought fees and costs associated with four separate foreclosure lawsuits, which fall squarely under this provision as it allows for the reimbursement of *any* reasonable attorney fees incurred by plaintiff as it applies to the foreclosure actions brought under the loan agreement.

¶ 69    Like the trial court, we recognize that the language of the attorney fee provision is broad. At oral argument, defendant maintained that the broad reading of this provision was in error, as fee-shifting provisions are to be strictly construed. See *Bright Horizons Children's Centers, LLC*, 403 Ill. App. 3d at 254-55. We, however, are not broadly construing this provision; it is the language of the provision itself (as drafted by the parties) that is broad. Our goal is to give effect to the intent of the parties, as demonstrated by the language in the contract. *Lease Management Equipment Corp.*, 392 Ill. App. 3d at 685. In this instance, the "letter of the text" reveals that the parties' incorporated broad language (such as the use of the word "any") into the attorney fee provision and thus clearly intended for defendant to reimburse plaintiff for "any" reasonable fees incurred in connection with the enforcement or preservation of any rights or remedies under the loan agreement. Accordingly, we conclude that the fee-shifting provision provides for recovery of the attorney fees and costs associated with the four other foreclosure lawsuits.

¶ 70    In his reply, defendant maintains that if he is found to owe attorney fees associated with the recovery of the collateral, then he is only jointly and severally liable for those fees associated with the Michigan property. According to defendant, the Michigan property was the only collateral that was part of the loan agreement at the time he signed it. Defendant asserts he was not party to any agreement modifying the loan to include the other three properties as collateral

and thus is not liable for the attorney fees associated with those properties.

¶ 71    What defendant fails to acknowledge is that the loan agreement provides that each borrower shall reimburse plaintiff for any reasonable costs and attorney fees incurred by plaintiff in connection with the enforcement or preservation of any rights or remedies under "*any other documents* executed in connection with this Agreement, and in connection with *any amendment* \*\*\* or *restructuring* under this Agreement."  (Emphasis added.)  The collateral with which defendant takes issue was substituted for the original collateral.  This substitution can be considered to be an "amendment" or "restructuring" of the agreement under the fee-shifting provision.  In addition, although the loan agreement itself does not account for two of the properties secured as collateral, the mortgages on those properties do include references to the loan agreement and indicate they are collateral for the loan agreement.  Accordingly, we conclude the plain language of the fee-shifting provision of this specific loan agreement includes the attorney fees associated with these other mortgages not listed in the loan agreement itself. See *Virginia Surety Co.*, 224 Ill. 2d at 556.

¶ 72    Defendant next asserts that the trial court abused its discretion because the attorney fees and costs related to this litigation were unreasonable where 1) the petition is "vague and conclusory," 2) the petition did not set forth in sufficient detail the fees charged, 3) the fees for each of the five cases were "blended together," and 4) plaintiff's bill could have been markedly lower had it provided the proper documentation regarding its standing at the onset of the litigation.

¶ 73    The trial court may award only reasonable fees, which consist of "reasonable charges for reasonable services."  *McHenry Savings Bank v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 113 (2010).  "When assessing the reasonableness of fees, a trial court may consider a

26

variety of factors, including the nature of the case, the case's novelty and difficulty level, the skill and standing of the attorney, the degree of responsibility required, the usual and customary charges for similar work, and the connection between the litigation and the fees charged." *Richardson v. Haddon*, 375 Ill. App. 3d 312, 314-15 (2007). The trial court has broad discretionary powers in awarding attorney fees, and we will not reverse absent an abuse of discretion. *Id.* at 314.

¶ 74    Here, plaintiff sought attorney fees it incurred for investigating the loan and modifying the loan agreement, litigating the present matter, and for the four mortgage foreclosure cases which involved the collateral for the loan agreement. This amount totaled $176,071.66. In support of its fee petition, plaintiff submitted the affidavit of Flier, plaintiff's lead counsel, set forth the fees charged by him and the other attorneys who worked on this case. Flier indicated he charged between $415 and $475 per hour and that the other attorneys who handled the matter charged between $270 and $475 per hour. See *First Midwest Bank, N.A. v. Sparks*, 289 Ill. App. 3d 252, 263 (1997). Flier set forth the qualifications of those attorneys and indicated that the more experience an attorney had the higher his or her hourly rate was. See *J.B. Esker & Sons v. Cle-Pa's Partnership*, 325 Ill App. 3d 276, 283 (2001). A review of the fee petition reveals that it specified the services performed, the attorney who performed the services, the time expended, and the hourly rate charged. See *Kroot v. Chan*, 2017 IL App (1st) 162315, ¶ 37. It is evident from the affidavit, as well as the overall record in this case, that the matter was complex; it involved a commercial dispute regarding a 1.8 million dollar loan, numerous mortgages that served as collateral for that loan, and an unconventional "pledge agreement" regarding Freeman's Facebook stock. Our review of the petition thus reveals that the petition was neither vague nor conclusory and we refute defendant's assertion that it did not set forth the names of

27

those who worked on the matters and their rates.

¶ 75    We also reject defendant's argument that the attorney fees are unreasonable because the itemized bill "contains a blend of attorney billing for all of the cases and does not separate or keep distinct the attorney billing for each matter." Defendant cites no case law in support of this proposition. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017) (argument in appellate brief must be supported by citation to legal authority and factual record). Moreover, our review of the matter indicates that plaintiff did provide a detailed account of the services performed by the attorneys in this matter and attempted to separate out the billing for each of the five cases, despite there being some minor overlapping. We do not find this minor overlapping to be troubling where the cases were intertwined and the fee-shifting provision allowed for the recovery of all the fees incurred in this instance.

¶ 76    We further reject defendant's argument that plaintiff's delay in providing the relevant documents regarding its standing unnecessarily increased the fees incurred. As explained above, it was defendant who failed to engage in discovery or even assert his affirmative defense in a timely fashion. Consequently, we decline to find the fees charged to be unreasonable for this reason.

¶ 77    Lastly, defendant criticizes the trial court for not holding an evidentiary hearing regarding the issue of attorney fees. We observe that defendant never requested such an evidentiary hearing. See *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 103 (2001) (the failure to request an evidentiary hearing on attorneys fees results in a waiver of one's right to the hearing). Moreover, "[a]n evidentiary hearing is not always necessary in order to determine reasonable attorney fees. A nonevidentiary proceeding is proper so long as the trier of fact can determine from the evidence presented, including a detailed breakdown to fees and expenses,

28

what amount would be reasonable, and the opponent is not deprived of the opportunity to present evidence." *Kroot*, 2017 IL App (1st) 162315, ¶ 37. As previously discussed, plaintiff's fee petition provided such a detailed breakdown.

¶ 78     We conclude the trial court did not abuse its discretion in its award of attorney fees to plaintiff.

¶ 79                                    CONCLUSION

¶ 80     For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 81     Affirmed.